J-S41024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RANDY REYES DELEON :
:
Appellant : No. 960 MDA 2018

Appeal from the Judgment of Sentence April 30, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003259-2017

BEFORE: LAZARUS, J., MURRAY, J., and STRASSBURGER*, J.

MEMORANDUM BY MURRAY, J.: **FILED AUGUST 09, 2019**

Randy Reyes Deleon (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of kidnapping, unlawful restraint, and firearms not to be carried without a license.[1] Upon review, we affirm on the basis of the trial court's Pa.R.A.P. 1925(a) opinion.

Briefly, the evidence established that Appellant and A.S. (Victim) dated for approximately two years before the relationship ended in late 2016. Victim testified that on the afternoon of June 12, 2017, Appellant began to follow her while she was driving through the Borough of Wyomissing. While she was stopped at an intersection, Appellant used his vehicle to trap Victim's car against a third vehicle. Appellant then smashed Victim's car window, opened the driver's door, entered Victim's vehicle while pushing her into the

_____

[1] 18 Pa.C.S.A. §§ 2901(a)(3), 2902(a)(1), 6106(a)(1).

_____

* Retired Senior Judge assigned to the Superior Court.

passenger's seat, and forced her to end her call to 911 for help. Appellant was carrying a loaded 9-millimeter handgun. Victim stated that Appellant drove her vehicle across a sidewalk and through a lawn as he took her to a secluded location roughly 10 to 15 minutes away. Victim testified that Appellant then told her to get out of her vehicle and forced her to walk a distance through the forest until they reached the home of one of Appellant's friends. Appellant held Victim captive in the home for several hours until a standoff with the police resulted in Appellant's arrest.

On March 29, 2018, a jury found Appellant guilty of kidnapping, unlawful restraint, and firearms not to be carried without a license. On April 30, 2018, the trial court sentenced Appellant to an aggregate term of 11 to 22 years of incarceration. On May 9, 2018, Appellant filed timely post-sentence motions, which the trial court denied on May 16, 2018. This timely appeal followed.[2]

On appeal, Appellant presents the following issues for review:

A.    WHETHER THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AS TO KIDNAPPING. THE EVIDENCE DID NOT SUPPORT THE SUBSTANTIAL DISTANCE ELEMENT OR THE REMOVING FROM PLACE VICTIM WAS FOUND. VICTIM WAS NOT HELD AGAINST WILL. VICTIM COULD LEAVE THE CAR AND DID LEAVE THE CAR?

B.    WHETHER THE EVIDENCE WAS INSUFFICIENT AS MATTER OF LAW AS TO UNLAWFUL RESTRAINT; EXPOSING TO RISK OF SERIOUS BODILY INJURY?

C.    WHETHER THE SENTENCE WAS EXCESSIVE AND PRIOR RECORD SCORE CALCULATION WAS IN ERROR?

---

[2] Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant's Brief at 5.

Appellant's first two issues challenge the sufficiency of the evidence of his kidnapping and unlawful restraint convictions. With respect to his kidnapping conviction, Appellant argues that the Commonwealth did not prove that he removed Victim a substantial distance against her will. With regard to his unlawful restraint conviction, Appellant argues that the Commonwealth failed to prove he exposed Victim to a risk of serious bodily injury.

For claims challenging the sufficiency of the evidence, we recognize:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

For his third issue, Appellant challenges this discretionary aspects of his sentence. As the trial court pointed out, Appellant has waived this claim for purposes of our review because Appellant's Pa.R.A.P. 1925(b) statement only contains a vague assertion that his sentence "was excessive and prior record score calculation was in error." Pa.R.A.P. 1925(b) Statement, 7/16/18. We have explained, "[i]f a Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard any argument." ***Commonwealth v. Reeves***, 907 A.2d 1, 2 (Pa. Super. 2006); ***see also Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa. Super. 2011) (stating that "if a concise statement is too vague, the court may find waiver").

In sum, having reviewed Appellant's brief, the record, and prevailing law, we conclude that there was no error or abuse of discretion in this case. Further, the Honorable Patrick T. Barrett, sitting as the trial court, has authored a comprehensive and well-reasoned opinion that accurately recounts the evidence and disposes of Appellant's sufficiency and sentencing issues. Accordingly, we adopt Judge Barrett's January 23, 2019 opinion as our own in affirming Appellant's judgment of sentence. Because we have adopted the

trial court's opinion, we direct the parties to include it in all future filings relating to the merits of this appeal.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2019

## COURT OF COMMON PLEAS OF BERKS COUNTY – CRIMINAL

COMMONWEALTH OF PENNSYLVANIA   :   No.CP-06-CR-0003259-2017

                : 

v.                        :   **960 MDA 2018**

                : 

RANDY REYES DELEON         :   Patrick BARRETT, J.

                : 

## <u>RULE 1925(A) OPINION</u>

### I. INTRODUCTION

Defendant/Appellant, Randy Reyes-Deleon, filed this direct appeal from the judgment of sentence entered April 30, 2018, as made final by the order of May 16, 2018 denying his Post-Sentence Motion.

### II. BACKGROUND

Following a two-day trial held March 28-29, 2018, Defendant was convicted by a jury of kidnapping, carrying a firearm without a license, and unlawful restraint.[1]

Defendant and his ex-girlfriend ("A.S"), the victim in this case, dated on-and-off for about two years before they broke up in late 2016. On the afternoon of June 12, 2017, about seven or eight months after A.S. and Defendant stopped dating, A.S. was at the home of a male acquaintance in Wyomissing, Berks County. Around 2:00 p.m. she left and began driving home on Reading Boulevard. As she drove on Reading Boulevard A.S. noticed that Defendant was driving behind her, operating a white Hyundai Santa Fe. When the two vehicles stopped at a red light at the intersection of Wyomissing Boulevard, Defendant drove his vehicle in front of A.S. As A.S. tried to reverse to get away, Defendant

---

[1] 18 Pa.C.S. §§ 2901(a)(3), 6106(a)(1), and 2902(a)(1), respectively. Defendant was also charged at Count 2 of the Information with persons not to possess firearms. This count was severed for trial and, on June 4, 2018, the court granted the Commonwealth's Motion for Nolle Prosequi.

maneuvered his car to trap A.S.'s vehicle between his Santa Fe and a parked vehicle. A.S. was not able to move her car.

Defendant got out of his car and began screaming, telling A.S. to wind down her window. When A.S. refused, Defendant smashed her driver's side window, opened the door, climbed in the driver's side door, and shoved A.S. into the passenger seat. A.S. called 9-1-1 from her cell phone. On the tape recording of the call A.S. can be heard screaming "get out," "get off me," and "help me." Defendant can also be heard saying "hang up, hang up, hang up." Defendant took control of A.S.'s vehicle and drove away, speeding across the lawn of Atonement Lutheran Church and leaving his unattended Santa Fe vehicle still running in the middle of the street.

During the kidnapping, Defendant had a fully operational, loaded Astra 9mm handgun on his person and in the vehicle as they drove around Wyomissing and the West Reading area for about 10-15 minutes. During this time Defendant talked to A.S. about their former relationship and indicated that he wanted to get back together. Defendant ultimately parked in the parking lot of Wyomissing Garden Apartments near Berks Catholic High School. Once parked, Defendant got out of the car, placed the gun in his pants waistband, walked around to the passenger side, and removed A.S. from the car by her wrist. A.S. did not know where Defendant was taking her.

After Defendant forced A.S. to get out of the vehicle, he dragged her through the woods to the Oakbrook Homes public housing development and took her inside a home. Defendant carried the handgun into the home with him. The home, which is located within the City of Reading, belonged to Defendant's family friend, Sarah Jimenez. A.S. had never been to the home and did not know where she was.

Ms. Jimenez and her boyfriend were in the home when Defendant and A.S. went inside. A.S. did not recognize the man or Ms. Jimenez and did not immediately say anything to either of them about her present situation. Likewise, Ms. Jimenez did not know A.S. A.S. and Defendant were both crying as

they entered the home. A second woman appeared inside the home, Ms. Jimenez's daughter, Lilliam. A.S. sat down on the couch next to Lilliam and continued crying while Defendant continued to yell. At the direction of Ms. Jimenez, Lilliam escorted A.S. to a bedroom upstairs while Defendant remained on the main floor in the kitchen with Ms. Jimenez. Defendant told A.S. to stay in an upstairs room and said he would not let her leave. While in the house Defendant threatened A.S. that if she contacted the cops he would react, and told her that he would have shot A.S. and her male acquaintance if he had seen them together. Ms. Jimenez was able to convince Defendant to give her the gun, which she placed on the top shelf of a closet.

Shortly after the Defendant took control of A.S.'s vehicle, the Wyomissing Police Department was notified of an abandoned Hyundai Santa Fe vehicle and an altercation at the location of Wyomissing and Reading Boulevards. Around 5:00 p.m. the Wyomissing Police Department determined that there had been a kidnapping. Eventually law enforcement learned that the subject individuals were in the home in the Oakbrook Homes complex, and at 7:10 p.m. the Reading Police Department established a formal perimeter around the home and attempted to make contact *via* a public address system. Multiple individuals came out from inside the home, but Defendant remained inside. After approximately an hour the Reading Police Department requested the assistance of the Pennsylvania State Police Special Emergency Response Team ("SERT") because the Jimenez home was in a densely-populated neighborhood and it was beginning to get dark. Before the entire SERT team could deploy, Defendant walked out of the home and was taken into custody. Later that evening the handgun was retrieved from inside the home with the assistance of Ms. Jimenez.

Throughout the ordeal Defendant did not take A.S.'s cell phone from her. A.S. had her cell phone on her the entire time she was in the home, including when she was upstairs with Lilliam and Defendant was downstairs with Ms. Jimenez. All told, the incident lasted for more than four hours.

2019 JAN 23 PM 4: 25

CLERK OF COURTS

After taking over control of A.S.'s vehicle, Defendant dragged her into an unfamiliar home and remained inside the house with A.S. the entire time only permitting her to leave once a Special Emergency Repose police unit had completely surrounded the home. A.S. was scared the entire time. Defendant did not cause any physical bodily injury.

The trial court sentenced Defendant to an aggregate term of 11 to 22 years' imprisonment (with 323 days' credit for time served).

Defendant, by and through his attorney, Daniel C. Nevins, Esquire, filed a Post-Sentence Motion on May 9, 2018, which this Court denied without a hearing on May 16, 2018. The same day the court denied Defendant's Post-Sentence Motion (May 16, 2018), Defendant filed a *pro se* Motion for Removal of Counsel and Post-Sentence Collateral Relief dated May 1, 2018 (i.e., the day after sentencing). This *pro se* motion was received by the undersigned judge on May 23, 2018 and, on June 4, 2018, the court entered an order permitting Mr. Nevins leave to withdraw as counsel.[2]

The court had not yet entered an order concerning Defendant's *pro se* motion for "Post-Sentence Collateral Relief" when, on June 13, 2018, Defendant filed a timely, *pro se* Notice of Appeal to the Superior Court.[3]

On June 25, 2018, the court issued an order directing a concise statement of errors complained of on appeal. On July 2, 2018, John J. McMahon, Jr., Esquire entered his appearance for Defendant and, on July 16, 2018, filed and served a timely, counseled Concise Statement of Errors Complained of on Appeal (hereinafter, the "Statement").

---

[2] Defendant was initially represented by James M. Polyak, Esquire. Mr. Polyak withdrew as counsel on October 11, 2017, and Mr. Nevins simultaneously entered his appearance. Mr. Nevins represented Defendant through the post-sentence stage.

[3] Pursuant to Pennsylvania Rule of Appellate Procedure 1701, this Court has not proceeded further with Defendant's *pro se* post-sentence motion.

## III. DISCUSSION

Defendant asserts three assignments of error. The first and second issues concern the sufficiency of evidence to sustain the guilty verdicts of kidnapping and unlawful restraint, respectively. The third claim concerns the length of his sentence.

Defendant's Statement, verbatim, reads in its entirety as follows:

> The Defendant, Randy Reyes DeLeon, by and thought counsel, Jack McMahon, Esquire, avers the following:
>
> 1. Evidence was insufficient as a matter of law as to kidnapping. The evidence did not support the substantial distance element or the removing from place victim was found. Victim was not held against will. Victim could leave the car and did leave the car.
>
> 2. Evidence was insufficient as matter of law as to unlawful restraint; exposing to risk of serious bodily injury
>
> 3. Sentence was excessive and prior record score calculation was in error.

(Concise Statement of Matters Complained of on Appeal, 07/16/2018).

### Statement of Error #1

Defendant first asserts as error insufficient evidence of various elements of kidnapping. Defendant's first claim is two parts. He claims there was insufficient evidence that the victim was moved a substantial distance or that Defendant removed the victim from the place where she was found. Defendant was charged and convicted with violating the following section of the kidnapping statute, 18 Pa.C.S. § 2901:

> (a) Offense defined – [A] person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, **or** if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
>
> * * *
>
> (3) To inflict bodily injury on or to terrorize the victim or another.

18 Pa.C.S. § 2901(a)(3) (emphasis added).

Initially, Defendant's claim that the evidence of kidnapping was insufficient as a matter of law because, "it did not support the substantial distance element" totally ignores that his kidnapping conviction may have been based on unlawful confinement for a substantial period in a place of isolation. In other words, the Commonwealth need not establish in every case that the defendant removed "another a substantial distance" if there is sufficient evidence that the defendant unlawfully confined another for a substantial period in a place of isolation. In the instant matter the Commonwealth presented substantial evidence to allow a jury to convict under either provisions, and Defendant's claim lacks merit.

A removal or confinement is unlawful within the meaning of the offense of kidnapping if it is accomplished by force, threat, or deception. 18 Pa.C.S. § 2901(b)(1). The determination of whether the victim was moved a substantial distance is evaluated under the circumstances of the incident. *Commonwealth v. Malloy*, 856 A.2d 767 (Pa. 2004). "For purposes of the kidnapping statute, a substantial distance is not limited to a defined linear distance or a certain time period." *Id.* at 779. A "substantial distance" is a distance that isolates the victim and exposes the victim to an increased risk of harm. *In re T.G.*, 836 A.2d 1003 (Pa. Super. 2003). *See Commonwealth v. Dehoniesto*, 624 A.2d 156 (Pa. Super. 1993) (in a prosecution for kidnapping, the removal of the victim was far enough to constitute a substantial distance where the victim was taken at gunpoint from her home and transported about six miles to an isolated park); *Commonwealth v. Hughes*, 399 A.2d 694 (Pa. Super. 1979)(court sustained appellant's conviction for kidnapping where victim was taken two miles to an isolated area where she was raped and thereafter returned)[4]; *Malloy, supra.* (defendant's act of transporting his victim by car 10 to 12 blocks to a secluded lot where he was lured out of the car and shot was movement substantial enough to support a kidnapping conviction).

---

[4] "[Since] the wooded area to which she was brought was in an isolated area, seemingly beyond the aid of her friends and police [, ...] two miles is a substantial enough distance to place the victim in a completely different environmental setting removed from the security of familiar surroundings." *Hughes*, 399 A.2d at 698.

In the instant case, the evidence established that Defendant transported the victim a substantial distance to a secluded, wooded area, then into a home where he held her for over four hours, and by his conduct exposed A.S. to an increased risk of harm each step of the way. First, Defendant pinned A.S.'s car against another vehicle in the middle of traffic with his own vehicle, smashed her car window open, pushed her into the passenger seat, and forced her to hang up in the middle of a 9-1-1 call for help. Defendant drove across a sidewalk and a lawn as he left the intersection and drove the victim around in her own car with an operational, loaded Astra 9mm handgun on his person for 10-15 minutes before stopping the car in a parking lot approximately four or five miles from the scene of the initial abduction and taking her into an unfamiliar home. Once inside the home he engaged in an hour's long hold-out while multiple police units, including a SWAT team, surrounded the residence. In short, this evidence is more than sufficient to demonstrate that Defendant kidnapped his ex-girlfriend, A.S.

**Statement of Error #2**

Defendant's next contention is that the evidence was insufficient as to his conviction for unlawful restraint. Specifically, Defendant asserts there was insufficient evidence that the victim was exposed to the risk of serious bodily injury.

Defendant was charged and convicted with violating the following section of the unlawful restraint statute, 18 Pa.C.S. § 2902:

(a) Offense defined – [A] person commits a misdemeanor of the first degree if he knowingly:

\* \* \*

(1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury

18 Pa.C.S. § 2902(a)(1). "This section establishes a crime between kidnapping and false imprisonment [and] is intended to cover restraints which do not reach the magnitude of kidnapping but are somewhat more serious than mere false imprisonment." Official Comment to 18 Pa.C.S. § 2902.

In *Commonwealth v. Schilling*, 431 A.2d 1088 (Pa. Super. 1981), the defendant used a pellet gun or air pistol to force his victim to perform oral sex and he was subsequently charged with unlawful restraint, among other things. The defendant argued he could not be convicted under section (1) of the statute as the Commonwealth failed to prove he exposed his victim to serious bodily injury. The Superior Court said:

> In [*Commonwealth v. Trowbridge,* 261 Pa.Super. 109, 395 A.2d 1337 (1978) ], this Court noted that with respect to the crime of recklessly endangering another person that mere apparent ability to inflict harm is not enough to support a conviction for this crime. It was held that an actual danger of harm must be shown. Although *Trowbridge* did not deal with the same crime we have here, it is important with respect to the fact that the Commonwealth had to prove an actual danger of serious bodily injury with regard to the pointing of an *air rifle*. In *Trowbridge* we held that the Commonwealth must prove either that the gun was loaded or that the surrounding circumstances were inherently dangerous in order to sufficiently show an actual danger in serious bodily injury.

*Schilling* at 1092 (emphasis in original).

Instantly, the Commonwealth established that Defendant possessed a 9mm handgun, the gun was loaded, the gun was not secured, and A.S. was exposed to the gun throughout the incident. In addition, Defendant did not use an air gun like the defendant in *Schilling*, but a fully-operational 9mm handgun which is inherently more dangerous. Moreover, the second part of the analysis has been met in that Defendant subjected his victim to circumstances which were inherently dangerous. Pinning A.S. against another vehicle in traffic, smashing in her window, entering the running vehicle and shoving her into the passenger seat, taking control of the car and driving across a sidewalk and church yard all while carrying a loaded weapon – not to mention forcing her to remain inside a home she had never been in and despite the growing presence of armed law enforcement outside the residence – was sufficient proof of inherently dangerous circumstances showing Defendant had placed A.S. in danger of serious bodily harm.

## Statement of Error #3

Defendant next contends that the trial court erred in sentencing him. He asserts that (a) the sentence was excessive and (b) the prior record score calculation was in error. This Court submits that both of Defendant's sentencing claims are waived.

(a)     This court sentenced Defendant to 7.5 to 15 years for Count 1 (kidnapping) and 3.5 to 7 years for Count 3 (carrying a firearm without a license), to run consecutively, for a total minimum sentence of 11 years. In his Statement, Defendant does not specify why he claims the sentence is excessive. He merely states: "Sentence is excessive[.]" (Concise Statement of Matters Complained of on Appeal, 07/16/2018, at 3).

In *Commonwealth v. Lemon*, 804 A.2d 34 (Pa. Super. 2002), the appellant made only a very general and vague statement in his 1925(b) statement, that "[t]he trial judge erred in sentencing the Appellant to the term of imprisonment to which he was sentenced," without stating specific reasons. As a result, the trial court summarily dismissed Lemon's discretionary challenge and the Superior Court affirmed and held that the issue was waived because Lemon failed to identify this precise issue specifically enough in his 1925(b) statement, and the trial court was left to frame and raise the issue for Lemon. In so holding, the Superior Court stated: "We specifically conclude that when an appellant fails to identify in a vague Pa.R.A.P.1925(b) statement the specific issue he/she wants to raise on appeal, the issue is waived, even if the trial court guesses correctly and addresses the issue in its Pa.R.A.P.1925(a) opinion." *Lemon*, 804 A.2d at 38. Further, "[t]he trial court may not frame the issues for an appellant, either by guessing or anticipating." *Id.*

In the instant case, Defendant's Pa.R.A.P.1925(b) Statement is too general and vague to apprise this Court of the precise issue to be raised. Although one might conclude based on Defendant's counseled post-sentence motion that he believes the court should not have imposed consecutive sentences,[5] this

---

[5] In his counseled Post-Sentence Motion, Defendant did not challenge the legality of sentence, but only its discretionary aspects; namely, the decision to impose consecutive sentences. *See* Post-Sentence Motion

Court is prohibited under the holding and rationale in *Lemon* from inferring and/or framing an issue in specific terms that is not specified in a 1925(b) statement. Therefore, Defendant's claim that the sentence is excessive is waived.

Notwithstanding waiver for lack of specificity, this claim of error is not appropriate on appeal. An appellant must raise a substantial question as to the appropriateness of the sentence which would permit an appellate court to accept the appeal as to this issue. *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987). Here, Defendant is challenging the court's imposition of consecutive rather than concurrent sentences. Such a challenge does not present a substantial question. *See Commonwealth v. Gaddis*, 639 A.2d 462, 469-470 (Pa. Super. 1994)(a challenge to the court's imposing consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence). Furthermore, long-standing precedent recognizes that 42 Pa. C.S. § 9721 affords the sentencing court discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time, upon consideration of the individual circumstances concerning the defendant and the many crimes he committed. This Court's decision to run Count 3 consecutively to Count 1 is consistent with the concern raised by several Pennsylvania appellate courts that defendants not be given "volume discounts" for multiple criminal acts that arose out of one larger criminal transaction). *See Commonwealth v. Anderson*, 650 A.2d 20, 22 (Pa. 1994); *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa .Super. 1995).

In fashioning Defendant's sentence, this Court also carefully considered the particular circumstances of the offenses and the character of Defendant. Defendant followed his ex-girlfriend as she drove on Wyomissing Boulevard about 3 p.m. on a Monday afternoon. He pinned her vehicle against another before getting out of his car to confront her. When she refused to put down her window, he smashed the driver's side window, shoved her into the passenger seat and drove away, speeding across the lawn of

(05/09/2018) at 5-8 (Defendant "believes that making the sentences consecutive is excessive," and "submits that making the sentences consecutive violates due process and the prohibition against cruel and unusual punishments.").

Atonement Lutheran Church and leaving his unattended vehicle still running in the middle of the street. A 9-1-1 call from the victim was played at trial in which Defendant can be heard demanding that the victim hang up. In addition, this case involved a deadly weapon. During the kidnapping, Defendant carried a loaded handgun near the victim as they drove around for 10-15 minutes. Defendant ultimately parked in an apartment parking lot and, with the gun on his person, grabbed the victim by her wrists and forced her out of the vehicle. At that point he dragged her through the woods to a different apartment complex and took her inside an unfamiliar home. He told the victim to stay in an upstairs room and remained with the victim inside the house for more than four hours, only permitting her to leave once police surrounded the home.

This Court also noted that Defendant, who was only 22-years-old at the time of the kidnapping, has a history of criminal activity and violence against innocent women. That history includes a juvenile felony adjudication for escape, as well as two Felony 2 adult convictions for criminal trespass, false imprisonment, and indirect criminal contempt for violation for a Protection From Abuse Order. Such behavior, despite previous stints in prison and probation, demonstrate that society, and particularly women who are/were close to him, needs to be protected from Defendant. Defendant made the conscious decision to hold on to his violent behavior toward women, and escalated his crimes to kidnapping his ex-girlfriend at gunpoint in broad daylight while she was driving her vehicle down a busy street. He then drove off in her vehicle demanding that she hang up her 9-1-1 call for help. Still further, Defendant reached out to A.S. in an effort to prevent her from testifying at trial despite a court order prohibiting contact. Defendant, through his friend "Randy", personally gave A.S. one thousand dollars in the hopes that she would refuse to appear and testify.

At this point, Mr. Reyes-Deleon has exhausted his rehabilitative opportunities and his history demonstrates he is simply not amenable to further community supervision. He will continue to be a significant risk to commit violent acts against women if he is not incarcerated. Therefore, a sentence

was imposed to protect the community from Defendant's criminal behavior, as well as to protect Defendant from his own self-destructive behavior. Ultimately, this Court determined that incarceration is necessary and is clearly warranted in this case.

(b)     Concerning his prior record score calculation, this Court notes that it based Defendant's sentence, in part, on a pre-sentence investigation report as well as representations by the Assistant District Attorney regarding Defendant's prior record score. Defendant, who was represented by counsel at sentencing, did not object to the prior record score calculation at that time and his counseled post-sentence motion does not include this issue.[6] Accordingly, this claim is waived for Defendant's failure to raise it before the trial court. Further, Defendant's bare claim in his Statement that the "prior record score calculation was in error" is not sufficiently specific to allow this Court to address the issue.

**BY THE COURT:**

**PATRICK T. BARRETT, J.**

***Distribution***
Superior Court
Berks Co. Clerk of Courts
Commonwealth – Berks D.A. (James Goldsmith, Esquire)
Defendant's attorney – Jack McMahon, Esquire
Defendant
Judge Barrett
Daniel Nevins, Esquire

---

[6] While *Defendant's pro se* motion for "Post-Sentence Collateral Relief" does claim that his prior record score should have been a four instead of a five, as noted in Footnote 3 of this Opinion the court has not considered Defendant's *pro se* motion. *See* Motion for Post-Sentence Collateral Relief (05/16/2018) at ¶ 14(C). Even so, this claim lacks merit. The Pre-Sentence Investigation Report generated by Berks County Adult Probation and provided to the court prior to sentencing erroneously lists his prior record score as on the front page as 4. However, a review of the contents of the report and Defendant's criminal record indicates that his prior record score was, in fact, a 5. Defendant had two adult Felony 2 convictions (2 points each) plus one felony adjudication that occurred after his 14th birthday (1 point).